FILED

DEC 18 2006  Nf

DEC 13 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MICHAEL MARINO | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HAWTHORN SCHOOL DISTRICT NO. 73; | ) |
| SUPERINTENDENT DR. YOUSSEF | ) |
| YOMTOOB, individually and in his official | ) |
| capacity; ALAN HAHN, individually and | ) |
| in his official capacity | ) |
| | ) |
| Defendants. | ) |

06CV6882

JUDGE HOLDERMAN

MAGISTRATE JUDGE DENLOW

**JURY TRIAL DEMANDED**

## COMPLAINT

The Plaintiff, Michael Marino, by his attorney, Keith L. Hunt, complains against

Defendants Hawthorn School District 73, Dr. Youssef Yomtoob and Alan Hahn as

follows:

## NATURE OF CLAIM

1.       This is a civil action for monetary damages, declaratory judgment, and

preliminary injunction to prevent the Defendants continuing deprivation of Plaintiff's

rights under United States Constitution.  Plaintiff has been deprived of his rights under

the Equal Protection clause and the Due Process clause by virtue of Defendants'

termination of Plaintiff without due process and on the basis of his disability.  This action

is pursuant to 42 U.S.C. § 1983 and § 1988 and the Fourteenth Amendment of the

United States Constitution.  Plaintiff also brings supplemental state law claims pursuant

to 28 U.S.C. § 1367.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983 for violations of

Plaintiff's due process and equal protection rights under the United States Constitution.

This court is jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C.

§ 1367.

3.    Declaratory injunction ruling and injunctive relief is authorized pursuant to 28

U.S.C. § 2201 and § 2202 and Rules 57 and 65 of the Federal Rules of Civil Procedure.

4.    This action is brought in the Northern District of Illinois as all parties reside

within this district and all relevant actions occurred within this district.


## FACTUAL ALLEGATIONS

5.    The Plaintiff, Michael Marino, has been employed by Hawthorn School

District 73 past twenty-four (24) years as a Maintenance Person and later as Director of

Maintenance.

6.    At all times, the Plaintiff's job performance has been acceptable and he has

met all of his employer's reasonable and legitimate business expectations.

7.    The Defendant, Hawthorn School District No. 73, is a school district

operating generally in the Vernon Hills and Mundelein, Illinois area operating six (6)

schools including Hawthorn Elementary School North, Hawthorn Elementary School

South, Aspen Elementary School of Choice, Townline Elementary School of Choice,

Hawthorn Middle School North, and Hawthorn Middle School South.

8.    The Defendant, Dr. Youssef ("Joe") Yomtoob was and is the Superintendent

of schools at all relevant times.

2

9.      The Defendant, Alan Hahn, was and is the Director of Finance and Business
Operations at all relevant times.

10.     Dr. Yomtoob and Mr. Hahn are final policy makers with respect to the
employment decisions at issue in this case.

11.     In 2002, Plaintiff suffered an on-the-job injury to his left shoulder
subsequently resulting in surgery.  Plaintiff returned to work after four (4) months.

12.     On or about September 23, 2004, Plaintiff injured his right shoulder (rotator
cuff) in an on-the-job injury.

13.     Plaintiff subsequently had surgery on his right shoulder on December 17,
2004.

14.     Between September 23, 2004 and December 17, 2004, Plaintiff continued to
perform all of his essential job functions subject to physician-imposed restrictions of: (1)
No lifting more than twenty (20) pounds; and (2) No overhead lifting.

15.     As part of Plaintiff's job duties, Plaintiff was rarely required to lift more than
twenty (20) pounds and was also rarely required to perform overhead lifting.

16.     Historically, Plaintiff has not been required in his position to lift more than
twenty (20) pounds except occasionally.

17.     Other employees who had previously had twenty (20) pound lifting
restrictions were allowed to retain their jobs.

18.     On or about December 16, 2004--the day before Plaintiff's surgery--Plaintiff
was speaking to Alan Hahn, the District's Business Manager, regarding his injury and
workers' compensation claim.  Plaintiff indicated that he had hired Craig Linn, an
attorney to represent him in connection with that claim, and Alan Hahn made a

3

condescending negative remark to the effect "I don't know what that is going to do for you" referring to the fact that the Plaintiff had hired an attorney. It was clear from Hahn's comment that Hahn and the District looked negatively on Plaintiff having hired an attorney to represent him in a Workers' Compensation claim.

19.     In 2005, while Plaintiff was out on leave, Hahn and Yomtoob replaced Plaintiff as Director of Maintenance for District 73 with another individual who was not disabled and who was less qualified, James Staples. Prior to that time, Staples had been a custodian in the District but did not have any maintenance responsibilities.

20.     Custodians in the district are responsible for cleaning the schools, sweeping and mopping floors, etc.

21.     Maintenance personnel in the District are responsible for maintaining the schools' operational systems including electrical, lighting, HVAC, water, plumbing and generally Maintenance personnel are required to have a higher level of skill and technical expertise than the custodial staff.

22.     Staples was not qualified to be placed in charge of Maintenance but nevertheless Yomtoob and Hahn placed Staples in that role during Plaintiff's absence giving him a different title of "Facilities Manager."

23.     Plaintiff was more qualified than Staples.

24.     In or about the summer of 2005, and after Plaintiff was off on medical leave, Defendants and their agents  purported to create a new job description containing inaccurate information concerning Plaintiff's title and essential job functions. (Exhibit A).

25.     Notwithstanding these inaccuracies, Plaintiff remained ready, willing and

4

able to perform the essential job functions listed under the new job description created in his absence, either with or without a reasonable accommodation.

26. At the time of Plaintiff's termination, Defendants never considered whether Plaintiff was able to perform his essential job functions either with or without a reasonable accommodation and never engaged in the interactive process required by the Americans with Disabilities Act.

27. Plaintiff remained on medical leave after his December 2004 surgery and actively participated in therapy and based on doctor's instructions was unable to return to work until May 30, 2006.

28. In February 2006, Dr. Jay Levin, Plaintiff's treating physician, placed the following restrictions:

> Please note that in my opinion the patients' restrictions are a one time lift of 70-80 pounds or frequent lifting of 40 pounds to waist height. Overhead lifting should be limited to 10 pounds. He demonstrated a static squat lift of 105.9 pounds and lifted 50 pounds to waist height, 4 repetitions, with compensated lifting patterns. Overhead lifting was significantly compensated attempting 20 pounds.
>
> Frequent lifting at 30-40 pounds to the waist, 10 pounds overhead, and a work level of medium are this patient's permanent restrictions. He is currently at maximum medical improvement.

29. On or about May 30, 2006, Hahn sent Plaintiff a letter, with the knowledge and consent and/or the direction of Yomtoob, terminating Plaintiff from his employment stating:

> Now that your recuperation from your workers' comp. injury is done, and your permanent restrictions prevent you from being able to perform your job, your employment with Hawthorn School District 73 was terminated as of May 2, 2006.

5

30.    On or about the date of his termination, Dr. Yomtoob told Plaintiff that Yomtoob had some work to be done around his house if the Plaintiff was interested. Such work included: overhead electrical and other work for which Plaintiff was qualified--notwithstanding the fact that the District, Yomtoob and Hahn had just terminated the Plaintiff on the ground that Plaintiff was not capable of performing such work.

## COUNT I
## VIOLATION OF EQUAL PROTECTION
## 42 U.S.C. § 1983
## (AGAINST ALL DEFENDANTS)

31.    Plaintiff realleges and readopts the allegations contained in paragraphs 1-30 as this paragraph.

32.    Hawthorn District 73 had a custom, policy or practice of discriminating against individuals who were disabled and/or who filed Workers' Compensation claims or sustained on-the-job injuries.

33.    Yomtoob and Hahn intentionally discriminated against Plaintiff while acting under color of law based on Plaintiff's medical condition and restrictions, their perception of his "disability" and violated his constitutional right to equal protection by treating him differently than similarly situated healthy employees. Defendants terminated Plaintiff in violation of his constitutional rights.

34.    Defendants violated Plaintiff's constitutional right in violation 42 U.S.C. § 1983.

35.    Defendants, through acts, omissions and conduct caused the Plaintiff to be deprived of his constitutional rights and caused constitutional injuries.

36.    As a direct and proximate result of Defendants intentional discrimination of

6

Plaintiff, Plaintiff has suffered and will continue to suffer, lost wages, future lost wages, loss of benefits, anxiety, humiliation, emotional distress, other out of pocket damages and sustained permanent and irreparable constitutional injuries.

37.     Each of the individual Defendants knew that it was impermissible to discriminate against Plaintiff on the basis of his disability and to utilize the authority vested in their respective governmental positions to deny him equal protection under the law.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against the Defendant and award the following relief:

        a.  Declare that Plaintiff's rights have been violated;

        b.  Preliminarily and permanently enjoin the Defendants and all those persons acting in concert or in participation with them from discriminating against Plaintiff and/or violating his constitutional rights;

        c.  Award Plaintiff back pay and lost wages benefits;

        d.  Award Plaintiff compensatory damages;

        e.  Award Plaintiff punitive damages;

        f.  Order that Plaintiff be reinstated to his former position with all interim salary increases;

        g.  Award Plaintiff his reasonable attorney's fees and costs; and

        h.  Award such other relief as the Court deems appropriate and just.

## COUNT II
## VIOLATIONS OF DUE PROCESS
## 42 U.S.C. § 1983
## (AGAINST ALL DEFENDANTS)

38.    Plaintiff realleges and readopts the allegations contained in paragraphs 1-37 as this paragraph.

39.    The American with Disabilities Act ("ADA") and the Handbook for Custodial/Maintenance Personnel – Hawthorn District #73 create a property interest in plaintiff's job.

40.    Plaintiff's termination from his duties with Hawthorn School District 73, his removal from the payroll and his belated notification of his termination were without cause and without adequate notice and opportunity to respond. In addition, rather than engaging in the interactive dialogue required between an employer and a "disabled" employee as contemplated and guaranteed by the Americans with Disabilities Act, Defendants deprived Plaintiff of property (his job) without due process of law.

41.    Plaintiff never committed any of the acts or misconduct enumerated in the policy handbook which could give rise to termination, nor did Defendants ever utilize the progressive disciplinary aspects of said policies.

42.    Plaintiff has suffered substantial losses by being terminated, by having his property taken without due process, and by being denied an opportunity to engage in an interactive dialogue to determine the appropriateness of any possible or potential reasonable accommodation, without cause and without due process. These losses include, but are not limited to, loss of continued employment, being denied salary, benefit and job security, being forced to incur attorney's fees and other expenses and by being forced to endure anxiety and severe emotional distress. Defendants have

deprived Plaintiff of due process rights guaranteed him by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against the Defendant and award the following relief:

a. Declare that Plaintiff's rights have been violated;

b. Preliminarily and permanently enjoin the Defendants and all those persons acting in concert or in participation with them from discriminating against Plaintiff and/or violating his constitutional rights;

c. Award Plaintiff back pay and lost wages benefits;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive damages;

f. Order that Plaintiff be reinstated to his former position with all interim salary increases;

g. Award Plaintiff his reasonable attorney's fees and costs; and

h. Award such other relief as the Court deems appropriate and just.

## COUNT III
## RETALIATORY DISCHARGE

43.     Plaintiff realleges and readopts the allegations contained in paragraphs 1-42 as this paragraph.

44.     Plaintiff engaged in a protected activity by filing a Workers' Compensation claim as was his right under Illinois law.

45.     Defendants retaliated against the Plaintiff for having filed a Workers'

Compensation claim in violation of Illinois public policy and longstanding Illinois

precedent.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in

Plaintiff's favor and against the Defendants and award Plaintiff compensatory and

punitive damages together with costs and interests of this action.

## COUNT IV
## BREACH OF CONTRACT FOR CONTINUED EMPLOYMENT

46.     Plaintiff realleges and readopts the allegations contained in paragraphs 1-45

as this paragraph.

47.     Defendants distributed and maintained an employee manual known as a

"Handbook for Custodial/Maintenance Personnel – Hawthorn District #73."

48.     Regarding the issue of termination, the Defendants' Handbook states:

> ### WORK RULES AND REGULATIONS
> Custodial service rules and regulations are established for the
> purpose of permitting our schools to operate in an orderly and
> effective manner and for the purpose of avoiding
> misunderstandings and irritation in the working place. There are
> some school rules and regulations which are so important and
> serious that a violation of one will result in immediate
> suspension and discharge.
>
> 1. Stealing
> 2. Falsification of records
> 3. Insubordination
> 4. Use of, possession of, or being under the influence of drugs
>    or alcohol
> 5. Gambling, fighting, or other such improper conduct
> 6. Inappropriate behavior, contact, or association with students
>    or staff.
>
> Beyond that, it is recognized that over a period of time an
> employee can develop bad work habits that can be corrected.
> The following corrective disciplinary procedure is intended to

point out shortcomings in an employee's work habits or practices so that satisfactory performance can be maintained. The procedure is also used to assure fair and uniform treatment for work rule violations and substandard performance. There are three steps to this procedure:

1) A verbal warning is made by the Head Custodian who also makes a note of I in his/her log or in their personnel file.

2) A second violation of the same nature, or a related violation, may result in a written warning notice.

3) Issuance or three written warning notices can result in suspension from work without pay or dismissal.

(Exhibit B).

49.    Defendants' Handbook constitutes a promise or guarantee of continued employment.

50.    Plaintiff never committed any of the acts specifically described in said paragraphs 1 through 6 of the Handbook for Custodial/Maintenance Personnel and therefore was not subject to termination.

51.    Defendants breached Plaintiff's contract for continued employment.

52.    Defendants Yomtoob and Hahn interfered with Plaintiff's contractual relations and prospective economic advantage without justification.

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against the Defendants and award Plaintiff damages together with the cost and interest of this action.

## PLAINTIFF DEMANDS TRIAL BY JURY

11

Respectfully submitted,

By: _____
Keith L. Hunt

Keith L. Hunt
Hunt & Associates, PC
70 West Madison
Suite 2100
Chicago, Illinois 60602
(312) 558-1300
khunt@huntassoclaw.com



Jan 27 06 09:42a       Laura Conte                                              PAGE 02/04
   01/25/2006   15:45    8473673298              HAWTHORN SCHO

**TITLE:**            **MAINTENANCE PERSON (North & South Zones)**

**QUALIFICATIONS:**  Must have working knowledge of mechanical, electrical, plumbing, general maintenance; know heating, air conditioning, and ventilation. Have some knowledge of building automation systems (BAS) and be able to read and understand schematics and blueprints. To be able to work with little or no supervision, be a team player and have good people skills. Be able to lift 50-80 pounds. Have a valid Illinois driver's license.

**REPORT TO:**       Facilities Manager

**CONTRACT:**        12 Month

**SALARY:**          As per annual salary agreement

**JOB DESCRIPTION:** To perform job requirements with little or no supervision. To be prepared to teach and help others in the maintenance department. Areas of responsibility are the building and equipment in the two zones (North and South) of District 73. Maintain all equipment in working condition at all times.

This position requires hard and, at times, dirty work. Be available for emergency call ins.

**Primary Responsibilities**

Examples of the work performed might include but not limited to:

Perform job responsibilities with little or no supervision.

Changing filters and belts

Repairing electrical switches, replace motors, etc.

Changing ballasts, light fixtures, etc.

Performing minor carpenter work

Performing minor vehicle and small equipment repairs (such as snowblowers, vacuum, etc.)

Perform preventive maintenance

Respond to BAS alarms, fire alarms, security alarms

SO#

EXHIBIT
A

Repair roofs and roof maintenance

Assist in snow plowing/removal when needed

Perform general plumbing work

Perform welding when needed

Assist maintenance journeyman and custodians when needed.

Perform all other duties as assigned by the Facilities Manager,
Director of Finance and Building Operations, Principal and
Superintendent of Schools.

skm:C/M Job Descriptions-2/01/05



HANDBOOK FOR CUSTODIAL/MAINTENANCE PERSONNEL

HAWTHORN DISTRICT #73

Thomas G. Oakson, Superintendent
Ben L. White, Administrative Assistant
Jess J. Porres, Business Manager

Revised 10/84



EXHIBIT

tabbies

B

INDEX

I. Purpose......................1

II. Selection of Personnel........1

III. Salary......................2

IV. IMRF.........................3

V. Health—Life Insurance Benefit.3

VI. Vacation.....................4

VII. Legal Holidays...............5

VIII. Sick Leave...................5

IX. Emergency Personal Leave......6

X. Bereavement...................6

XI. Schedules.....................7

XII. Emergency Closings...........7

XIII. Appearance...................8

XIV. Health Standards.............8

XV. Work Rules & Regulations......8

### I. PURPOSE

The continued success of Hawthorn District #73 is directly dependent upon the quality and professionalism of all personnel.

Yours is a "cooperative job" —— in order that good working relationships exist, it is imperative that you understand your working conditions, rules and regulations, and fringe benefits. This is the purpose of this handbook.

### EQUAL OPPORTUNITY EMPLOYMENT

It is the policy of the Hawthorn School District to provide equal employment to all qualified individuals in its hiring and promotional practices and to assure that there will be no discrimination in employment or employment opportunities against any person on the basis of race, color, religion, national origin, age or sex, except where age or sex is a bonafide occupational qualification, in accordance with applicable laws.

### II. SELECTION OF PERSONNEL

The Administrative Assistant is responsible for recruitment and hiring of all custodial personnel. All applicants will file applications and be screened by the Supervisor of Building and Grounds.

Each new employee is hired on a probationary basis for 90 days. At the end of that period and based upon satisfactory performance, employment status will be appropriately assigned.

(1)

## III. SALARY

Salary ranges for various jobs have been determined on the basis of job responsibility and complexity. These salary ranges are reviewed annually. Your salary and terms of employment are confirmed by the employment contract which you sign. Salaries are based on 260 days which includes paid holidays.

| Position | Minimum | Maximum |
|---|---|---|
| Maintenance Supervisor | $11.30 | $14.00 |
| Maintenance Helper | 7.75 | 10.25 |
| Groundsman | 7.16 | 8.63 |
| Head Custodian | 9.11 | 10.25 |
| Day Custodian | 6.42 | 8.16 |
| Night Custodian | 7.00 | 8.46 |
| Part-time Custodian | 3.75 | 4.75 |

In most cases, the hiring-in salary is the minimum salary; however, there is flexibility in this area. Salary ranges can make it possible to reward employees with merit adjustments when they demonstrate outstanding performance. Continued service in a position is not necessarily a crucial salary factor.

Each employee is encouraged to improve his/her performance and to prepare to assume greater responsibility. Vacancy should generally be filled by promotion from within the organization.

Paychecks will be issued on every other Friday. Required salary deductions are:
> Federal Income Withholding Tax
> State Income Tax
> Illinois Municipal Retirement Fund (includes Social
>     Security) – must work 600 hrs. per year
> Social Security (less than 600 hrs. per year)

Optional salary deductions which are to be paid by employees are:
1) Dependent coverage, medical and hospital insurance.
2) Dependent life insurance.
3) Tax shelter annuities.
4) Others, as approved by the administration.

(2)

Time Cards

Your Head Custodian will advise you of the starting and end-
ing time of the pay period, and also the day when you will
receive your paycheck.

You are responsible for recording on your time card the
hours you work each day. You must sign your time card at
the end of each week and turn it in to the Head Custodian
who will review and sign it. This policy is required by the
Federal Wage and Hour Laws, and a paycheck will not be
issued until this procedure is followed.

### ILLINOIS MUNICIPAL RETIREMENT FUND

Information regarding the Illinois Municipal Retirement Fund
is as follows:
1) All custodial employees who work more than 600 hours per
year are under the provisions of the Illinois Municipal
Retirement Fund.
2) The currently required percentage will be deducted from
the wages of each regular employee as a contribution to the
Illinois Municipal Retirement Fund. A deduction of 3/4%
will be made from all employees for survivors' benefits.
3) The Board of Education will pay to the Illinois Munici-
pal Retirement Fund a percentage of each of the employees'
monthly salary, as established by the IMRF Board of Direc-
tors. This amount is not deducted from the employees' pay,
but is a retirement contribution by the Board of Education.
4) Further information regarding benefits under the fund
may be secured from the Business Manager.

### XI. HEALTH, LIFE INSURANCE BENEFITS

All full-time twelve month employees will be allowed a medi-
cal insurance benefit of amount equal to single coverage for
health insurance. This benefit can be used by the employee
(including spouse and children) for the following:
    1) For all or part of health insurance,
    2) Premium rebate for additional life insurance,
    3) Dependent group life insurance,
    4) Reimburse paid receipts for medical/dental bills, eye
       glasses, hearing aids, and other items not covered
       under any other insurance plan.

(3)

Individuals will present bills or receipts to the business office in November and May. Those received by Dec. 1 will be reimbursed on the final payday of December to a maximum of $414.72. The excess from bills in December and those presented after December 1 will be reimbursed on the second payday of June. Unused balances will not be cumulative. Effective date of this clause is July 1 to June 30, except for new personnel whose effective date would be from the beginning of their employment to June 30. Personnel hired after July 1 will receive a prorated benefit of $69.12 per month.

The Board pays in full the premiums of a long-term diasbility policy. Details of this policy are available from the Business Manager.

The Board will pay the premium for a life insurance policy equivalent to one year's salary rounded to nearest thousand (minimum of $10,000.00.) Details are available from the Business Manager.

## VI. VACATION

Maintenance/custodial personnel on a 12-month basis shall receive the following vacation benefit:

> Two weeks after one years
> Three weeks after five years
> Four weeks after twenty years

Vacation dates are to be approved by the Administrative Assistant.

An employee who resigns or is discharged during the year shall receive with his/her termination pay the prorata amount of accrued vacation time, this time to be determined according to the number of full months of employment actually completed after July 1 of the given year.

Days may be used on a prorated basis per quarter year. Example: an employee entitled to two weeks may use 2.5 days after one quarter of the year has passed. A maximum of one week may be carried over to the following year.

(4)

## VII. LEGAL HOLIDAYS

All full-time twelve-month personnel are paid on the basis
of 260 days per year which includes the following holidays
providing they fall on a regularly scheduled workday.

New Year's Day                Labor Day
President's Day               Columbus Day
  or Lincoln's Birthday       Veteran's Day
Good Friday                   Thanksgiving Day and
Memorial Day                    Friday following
Independence Day              Christmas Day

## VII. SICK LEAVE

Each maintenance/custodial employee shall be granted sick
leave after one month of employment in the amount of one
day per month worked. Unused sick leave may be accumu-
lated for a total of 180 days at full pay. Newly employed
personnel shall be granted sick leave on the basis of one
day per month until June 30.

Sick leave is interpreted to mean personal illness, quaran-
tine at home, or serious illness or death in the immediate
family or household. Immediate family includes parents,
spouse, brothers, sisters, children, grandparents, grand-
children, parent-in-law, sister/brother-in-law and legal
guardians. All employees shall submit a "Personal Leave
Form" to the Superintendent before taking the leave. "Sick
Leave Forms" are to be submitted the day you return. Both
forms may be picked up in the office of the individual
buildings.

Sick leave benefits shall be credited against any payments
for temporary disability payable under the Workers' Compen-
sation Law. In other words, an employee disabled as a
result of an accident on duty shall receive full pay for
that period of time wherein he has accumulated sick leave
and a worker's compensation check for that period shall be
made payable or signed to the School District. After the
sick leave has been exhausted, the workers' compensation
shall be payable to the employee.

(5)

## VIII.  EMERGENCY PERSONAL LEAVE

Two days per year may  be granted for emergency leave.  How-
ever, a request for these days must be made to the Supervis-
or of Building and Grounds at least two days prior.  Written
request pertaining  to religious  holiday purposes  must  be
submitted at  least  one week  in  advance. In  case  of  an
immediate emergency,  the two-day  period may  be waived  if
approved  by  the  Superintendent. The  intent  of emergency
leave (personal leave)  is to provide  added protection  for
the  employee in  that he/she  would not  suffer salary loss
conducting his/her  necessary  personal affairs,  the  time
and  occurrence of  which  are  not within  his/her control,
require  his/her  attention,  and  necessitate  his/her
absence from work.

The school day  immediately  preceding or succeeding a holi-
day cannot be used for personal leave.  This stipulation may
be waived  upon the approval  of the Superintendent.  Unused
personal  business leave will become  sick leave days at the
end of the year.  All emergency leave must be submitted with
a stated reason for the request for the leave period.

## X.  BEREAVEMENT

Leave shall be granted  fulltime  employees due to the death
of a member of the  immediate  family.  Immediate family  is
defined as: wife, husband, son, daughter, grandson/daughter,
sister,  brother,  mother,  father,  mother/father-in-law,
daughter/son-in-law,  grandmother/father.  Such leave,  if
taken, shall not exceed  three working days unless  extended
at the direction of the Superintendent.

## XII.  SCHEDULES

Custodial employees shall follow the schedule developed by the Supervisor of Building and Grounds. Lunch and rest breaks are scheduled to coordinate with the requirements of your assignment.

In most cases work assignments are full time, eight hours per day, or if part time, three hours per day.

At times extra hours are required. Overtime must be authorized by the Supervisor of Building and Grounds at the time of occurrence. Overtime is paid at the rate of one and one-half times the hourly base rate for all hours in excess of 40 hours in a given week.

Attendance and Punctuality

The work assigned to you must be performed in accordance with strict time schedules. It is important that you make every effort to report to work every scheduled day and that you report on time. Should an illness or other emergency require you to be absent or late, you are to notify the office of the Administrative Assistant as soon as possible or not later than one hour before your scheduled starting time. Please inform the office of your reason for being absent and when you expect to return to work.

EMERGENCY DAYS

The following is the district policy on emergency snow days as it applies to the custodial staff:

1) Whenever a snow day is declared by the Superintendent, all maintenance and custodial personnel will be notified by phone as to what action will be required of them.

2) Maintenance personnel will come to work no matter what reason determined the closing of the schools; however, you will be called as to the time you are to report for work. Head custodians are expected to man their respective buildings and will also be called regarding contacting their personnel.

(7)

## YOUR APPEARANCE -- ~~UNIFORMS~~

You are expected to present a neat, clean, well-groomed appearance at all times while you are on duty. Remember that each custodial employee is a personal representative of the school district and must inspire confidence in our public. To the public, YOU are Hawthorn School District Custodial Service.

Uniforms have been provided for use during working hours.

## HEALTH STANDARDS

Upon employment a physical exam is required. The employer may request a physical exam as evidence of health or verification of illness and/or ability to perform assignment.

A T.B. test is required of all newly hired personnel.

## WORK RULES AND REGULATIONS

Custodial service rules and regulations are established for the purpose of permitting our schools to operate in an orderly and effective manner and for the purpose of avoiding misunderstandings and irritation in the working place. There are some school rules and regulations which are so important and serious that a violation of one will result in immediate suspension or discharge. These are:

1. Stealing
2. Falsification of records
3. Insubordination
4. Use of, possession of, or being under the influence of drugs or alcohol
5. Gambling, fighting, or other such improper conduct
6. Inappropriate behavior, contact, or association with students or staff.

Beyond that, it is recognized that over a period of time an employee can develop bad work habits that can be corrected. The following corrective disciplinary procedure is intended to point out shortcomings in an employee's work habits or practices so that satisfactory performance can be main-

(8)

tained. The procedure is also used to assure fair and uniform treatment for work rule violations and substandard performance. There are three steps to this procedure:

1) A verbal warning is made by the Head Custodian who also makes a note of it in his/her log or in the personnel file.

2) A second violation of the same nature, or a related violation, may result in a written warning notice.

3) Issuance of three written warning notices can result in suspension from work without pay or dismissal.

16:

(9)